Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN TRAVERS,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CEREVEL THERAPEUTICS HOLDINGS, INC., TONY COLES, RON RENAUD, MARIJN DEKKERS, DOUGLAS GIORDANO, CHRIS GORDON, ADAM KOPPEL, NORBERT RIEDEL, GABRIELLE SULZBERGER, RUTH MCKERNAN, DEVAL PATRICK, DEBORAH BARON, and SUNEET VARMA.<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, John Travers ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff brings this stockholder action against Cerevel Therapeutics Holdings, Inc. ("Cerevel" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to AbbeVie Inc. ("Parent") and Symphony Harlan LLC ("Intermediate Holdco") through merger vehicle Symphony Harlan Merger Sub Inc. ("Merger Sub") (collectively with "Parent" and "Intermediate Holdco," "AbbVie") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 7, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, AbbVie will acquire all of the remaining outstanding shares of Cerevel common stock at a price of $45.00 per share in cash (the "Merger Consideration"). The Company will survive the Merger as a wholly owned subsidiary of Parent.

3.      Thereafter, on January 5, 2024, the Company filed its Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy Statement") with the United States Securities and Exchange Commission (the "SEC"), followed by a Definitive Proxy Statement on January 18, 2024 (the "Definitive Proxy Statement").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, the Definitive Proxy Statement fails to disclose why no further market checks were conducted for other possible strategic alternatives, outside of the five companies specifically referenced, including the possibility of an investment by a potential equity partner.

5.      The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed

below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Cerevel, provided by the Company to the Company's financial advisors Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview, and provided to the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

7.      Plaintiff is a citizen of Rhode Island and, at all times relevant hereto, has been a Cerevel stockholder.

8.      Defendant Cerevel, a clinical-stage biopharmaceutical company, develops various therapies for neuroscience diseases in the United States. Cerevel is incorporated under the laws of the State of Delaware and has its principal place of business at 222 Jacobs Street, Suite 200, Cambridge, MA 02141. Shares of Cerevel common stock are traded on the NASDAQ Stock Exchange under the symbol "CERE."

9.      Defendant Tony Coles ("Coles") has been the Chairman of the Board of Director of the Company at all relevant times.

10.      Defendant Ron Renaud ("Renaud") has been a director of the Company at all relevant times. Renaud is also the President and Chief Executive Officer ("CEO") of the Company.

11.      Defendant Marijn Dekkers ("Dekkers") has been a director of the Company at all relevant times.

12.     Defendant Douglas Giordano ("Giordano") has been a director of the Company at all relevant times.

13.     Defendant Chris Gordon ("Gordon") has been a director of the Company at all relevant times.

14.     Defendant Adam Koppel ("Koppel") has been a director of the Company at all relevant times.

15.     Defendant Norbert Riedel ("Riedel") has been a director of the Company at all relevant times.

16.     Defendant Gabrielle Sulzberger ("Sulzberger") has been a director of the Company at all relevant times.

17.     Defendant Ruth McKernan ("McKernan") has been a director of the Company at all relevant times.

18.     Defendant Deval Patrick ("Patrick") has been a director of the Company at all relevant times.

19.     Defendant Deborah Baron ("Baron") has been a director of the Company at all relevant times.

20.     Defendant Suneet Varma ("Varma") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 9 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party AbbVie Inc., discovers, develops, manufactures, and sells pharmaceuticals worldwide.

23.     Non-Parties Intermediate Holdco and Merger Sub are wholly owned subsidiaries of AbbVie created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Cerevel, a clinical-stage biopharmaceutical company, develops various therapies for neuroscience diseases in the United States. It is developing Emraclidine, a positive allosteric modulator (PAM) that is in phase 1b clinical trials for the treatment of schizophrenia; and Darigabat, a PAM, which is in Phase 2 proof-of-concept trial in patients with drug-resistant focal

onset seizures in epilepsy or focal epilepsy, as well as in phase 1 trial to treat panic symptoms model. The Company's products also comprise Tavapadon, a selective dopamine D1/D5 partial agonist that is in phase 3 clinical trial for the treatment of early- and late-stage Parkinson's disease; CVL-871, a selective dopamine D1/D5 partial agonist, which is in Phase 2a clinical trial to treat dementia-related apathy; and CVL-354, a selective kappa-opioid receptor antagonist to treat major depressive disorder and substance use disorder.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 1, 2023, press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as Cash, cash equivalents and marketable securities as of September 30, 2023 totaled $758.2 million. In October 2023, we completed a follow-on public offering of our common stock raising approximately $498.7 million in aggregate net proceeds, including the full exercise of the underwriters' option to purchase additional shares. Cerevel's cash, cash equivalents, and marketable securities are expected to support all planned data readouts in 2024 and fund operations into 2026.

29.     Speaking on these positive results, CEO Defendant Renaud commented on the Company's positive financial results as follows, "Cerevel is bringing forward one of the broadest neuroscience pipelines in the industry, with novel approaches to treating challenging diseases, and we remain focused on execution as we head into multiple data readouts in 2024." Renaud furthered this sentiment by stating, "We are well-capitalized, with runway into 2026, and we have a strong team in place to advance our late-stage pipeline of potential new treatments for schizophrenia, epilepsy, and Parkinson's disease."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Cerevel. Based upon these positive financial results and outlook, the Company is likely to have future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Cerevel to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     The Definitive Proxy Statement fails to adequately disclose why no market check was conducted for other possible strategic alternatives, outside of the five companies specifically referenced, including the possibility of an investment by a potential equity partner.

34.     Moreover, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and AbbVie and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35.     Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On December 6, 2023, Cerevel and AbbVie issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> NORTH CHICAGO, Ill., and CAMBRIDGE, Mass., Dec. 6, 2023 -- AbbVie Inc. (NYSE: ABBV) and Cerevel Therapeutics (NASDAQ: CERE) today announced a definitive agreement under which AbbVie will acquire Cerevel Therapeutics and its robust neuroscience pipeline of multiple clinical-stage and preclinical candidates with potential across several diseases including schizophrenia, Parkinson's disease (PD), and mood disorders. The acquisition complements AbbVie's neuroscience portfolio, adding a wide range of potentially best-in-class assets that may transform standards of care across psychiatric and neurological disorders where significant unmet needs remain for patients.
>
> Under the terms of the transaction, AbbVie will acquire all outstanding shares of Cerevel for $45.00 per share in cash. The transaction values Cerevel at a total equity value of approximately $8.7 billion. The boards of directors of both companies have approved the transaction. This transaction is expected to close in the middle of 2024, subject to Cerevel shareholder approval, regulatory approvals, and other customary closing conditions.
>
> "Our existing neuroscience portfolio and our combined pipeline with Cerevel represents a significant growth opportunity well into the next decade," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "AbbVie will leverage its deep commercial capabilities, international infrastructure, and regulatory and clinical expertise to deliver substantial shareholder value with multibillion-dollar sales potential across Cerevel's portfolio of assets."
>
> "Cerevel has always been committed to transforming what is possible in neuroscience. With AbbVie's long-standing expertise in developing and commercializing medicines on a global scale, Cerevel's novel therapies will be well positioned to reach more people living with neuroscience diseases," said Ron Renaud, president and chief executive officer, Cerevel Therapeutics. "The talented, passionate, and dedicated Cerevel team has made great progress over the past five years in developing our innovative suite of potential medicines, and we are pleased that AbbVie has recognized the tremendous potential of our pipeline. This acquisition reinforces the renaissance we are seeing in neuroscience, and we are proud to be at the forefront."

Cerevel's late-stage asset emraclidine, a positive allosteric modulator (PAM) of the muscarinic M4 receptor, is a potential best-in-class, next-generation antipsychotic that may be effective in treating schizophrenia patients. Schizophrenia impacts more than five million people in the G7 (U.S., France, Germany, Italy, Spain, United Kingdom, and Japan) and a significant opportunity for treatment innovation remains for new and better tolerated therapies. In a Phase 1b study, emraclidine has shown promising efficacy and safety in schizophrenia and is currently completing two Phase 2 trials that were designed to be registration enabling. In addition, emraclidine has potential in dementia-related psychosis in Alzheimer's disease and PD. Emraclidine is currently in a Phase 1 study in elderly healthy volunteers in support of a potential Alzheimer's disease psychosis program.

In addition to emraclidine, Cerevel has multiple assets advancing in clinical development with best-in-class potential that are complementary to AbbVie's priority areas within neuroscience. Tavapadon, a first-in-class dopamine D1/D5 selective partial agonist for the management of PD, is currently in Phase 3 studies and has potential for both monotherapy and adjunctive treatment. Tavapadon's efficacy and safety-tolerability profile could enable its utility in early PD, becoming a near-term complementary asset to AbbVie's existing symptomatic therapies for advanced PD. CVL-354, currently in Phase 1, is a potential best-in-class kappa opioid receptor (KOR) antagonist that has the potential to provide significantly improved efficacy and tolerability compared to existing treatments for major depressive disorder (MDD). Darigabat, currently in Phase 2, is an alpha 2/3/5 selective $GABA_A$ receptor PAM for treatment-resistant epilepsy and panic disorder.

**Transaction Terms**

AbbVie will acquire all outstanding Cerevel common stock for $45.00 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by Cerevel shareholders. The proposed transaction is expected to be accretive to adjusted diluted earnings per share (EPS) beginning in 2030.

*Potential Conflicts of Interest*

38.     The breakdown of the benefits of the deal indicates that Cerevel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Cerevel.

39.     For example, Company insiders, currently own large illiquid blocks of Company stock, company options, restricted stock units, and other equity awards, all of which will be subject

to accelerated vesting upon the consummation of the Proposed Transaction, converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Company Options (#) | Value of Company Options ($) | Company RSU Awards (#)[2] | Value of Company RSU Awards ($) | Company PSU Awards (#)[1] | Value of Company PSU Awards ($) | Total Value of Company Options, Company RSU Awards, and Company PSU Awards ($) |
|---|---|---|---|---|---|---|---|
| *Non-Employee Directors* | | | | | | | |
| N. Anthony Coles, M.D. | 5,134,418 | 179,124,641 | 61,762 | 2,779,290 | — | — | 181,903,931 |
| Suneet Varma, M.B.A. | — | — | — | — | — | — | — |
| Christopher Gordon, M.B.A. | 80,189 | 1,989,757 | 3,282 | 147,690 | — | — | 2,137,447 |
| Deborah Baron, M.B.A. | — | — | — | — | — | — | — |
| Doug Giordano, M.B.A. | 95,242 | 2,457,454 | 3,282 | 147,690 | — | — | 2,605,144 |
| Adam Koppel, M.D., Ph.D. | 80,189 | 1,989,757 | 3,282 | 147,690 | — | — | 2,137,447 |
| Ruth McKernan, Ph.D., CBE, FMedSci | 92,986 | 2,249,107 | 3,282 | 147,690 | — | — | 2,396,797 |
| Marijn Dekkers, Ph.D. | 95,242 | 2,457,454 | 3,282 | 147,690 | — | — | 2,605,144 |
| Deval Patrick, J.D. | 49,794 | 1,061,831 | 3,282 | 147,690 | — | — | 1,209,521 |
| Norbert Riedel, Ph.D. | 95,242 | 2,457,454 | 3,282 | 147,690 | — | — | 2,605,144 |
| Gabrielle Sulzberger, J.D., M.B.A. | 95,242 | 2,457,454 | 3,282 | 147,690 | — | — | 2,605,144 |

| Name | Company Options (#) | Value of Company Options ($) | Company RSU Awards (#)[2] | Value of Company RSU Awards ($) | Company PSU Awards (#)[1] | Value of Company PSU Awards ($) | Total Value of Company Options, Company RSU Awards, and Company PSU Awards ($) |
|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | |
| Ronald Renaud, M.B.A. | 215,749 | 2,649,398 | 160,452 | 7,220,340 | 841,947 | 37,887,615 | 47,757,353 |
| Ramiro "Raymond" Sanchez, M.D. | 1,393,153 | 45,648,004 | 24,825 | 1,117,125 | — | — | 46,765,129 |
| Kenneth DiPietro | 711,827 | 23,492,402 | 13,913 | 626,085 | — | — | 24,118,487 |
| John Renger, Ph.D. | 778,418 | 21,584,529 | 20,081 | 903,645 | — | — | 22,488,174 |
| Kathleen Tregoning, M.A. | 614,428 | 17,859,552 | 13,804 | 621,180 | — | — | 18,480,732 |
| Scott Akamine, J.D. | 367,126 | 9,525,606 | 13,796 | 620,820 | — | — | 10,146,426 |
| Susan Altschuller, Ph.D., M.B.A. | 124,168 | 1,545,892 | 30,721 | 1,382,445 | — | — | 2,928,337 |
| Paul Burgess, J.D. | 95,931 | 1,299,865 | 23,847 | 1,073,115 | — | — | 2,372,980 |
| Mark Bodenrader | 277,817 | 8,867,703 | 19,284 | 867,780 | — | — | 9,735,483 |
| Abraham Ceesay, M.B.A.[3] | — | — | — | — | — | — | — |

40.     In addition, certain employment agreements with certain Cerevel executives entitle such executives to severance packages along with other equity benefits should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Tax Reimbursement ($)(5) | Total ($) |
|---|---|---|---|---|---|
| Ronald Renaud, M.B.A. | 1,788,750 | 47,757,353 | 42,962 | 24,300,000 | 73,889,065 |
| Susan Altschuller, Ph.D., M.B.A. | 725,000 | 2,928,337 | 28,641 | — | 3,681,978 |
| N. Anthony Coles, M.D. | — | 17,356,115 | — | — | 17,356,115 |
| Mark Bodenrader | 379,080 | 2,698,889 | 17,523 | | 3,095,492 |
| Ramiro "Raymond" Sanchez, M.D. | 751,165 | 7,264,958 | 16,328 | — | 8,032,451 |
| John Renger, Ph.D. | 726,936 | 6,447,192 | 28,641 | — | 7,202,769 |
| Abraham Ceesay, M.B.A. | — | — | — | — | — |

41.     The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of Cerevel, Plaintiff, or Company stockholders, it will produce benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Definitive Proxy Statement***

43.     On January 18, 2024, the Cerevel Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation of the

Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     The Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Definitive Proxy Statement fails to disclose:

a.   Adequate information regarding why no market check was conducted for other possible strategic alternatives, outside of the five companies specifically referenced, including the possibility of an investment by a potential equity partner;

b.   Whether the confidentiality agreements entered into by the Company with AbbVie differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including AbbVie, would fall away; and

d.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

46.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Cerevel's Financial Projections*

47.     The Definitive Proxy Statement fails to provide material information concerning financial projections for Cerevel provided by Cerevel management to the Board and Centerview and relied upon by Centerview in its analyses. The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

48.     Notably the Definitive Proxy Statement reveals that as part of its analyses, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Cerevel, including certain financial forecasts, analyses and projections relating to Cerevel prepared by management of Cerevel and furnished to Centerview by Cerevel for purposes of Centerview's analysis, and which are collectively referred to in this summary of Centerview's opinion as the 'Internal Data.'"

49.     Therefore, the Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Cerevel management provided to the Board and/or Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to the *Unaudited Prospective Financial Information* provided by Cervel Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

    a.  Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

    b.  EBIT, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: gross profit, and total operating expenses; and

    c.  Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: EBIT, tax expenses, capital expenditures, changes in net working capital, and depreciation and amortization.

51.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

52.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to vote in favor of the Proposed

Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

54.    In the Definitive Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55.    With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose the following:

    a.   Cerevel's present value utilized;

    b.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 12.0% to 14.0%;

    c.   Cerevel's terminal value utilized;

    d.   The underlying inputs, metrics, and assumptions used to determine the perpetuity decline rate of 50.0% year-over-year;

    e.   The underlying inputs, metrics, and assumptions used to determine Cerevel's tax savings, including specifically: estimated federal net operating losses and estimated future losses; and

    f.   The number of fully-diluted outstanding shares of Cerevel common stock as of December 1, 2023 utilized.

56.     With respect to the *Analyst Price Targets Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific price targets analyzed; and

      b.   The specific Wall Street firms that generated the analyzed price targets.

57.     With respect to the *Precedent Premium Paid Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific transactions compared;

      b.   The closing price of each target company's common stock as of the reference date utilized;

      c.   The unaffected 30-day calendar day volume weighted average price prior to the reference date for each transaction utilized; and

      d.   The underlying inputs, metrics, and assumptions used to determine the applied range of 55% to 80% utilized.

58.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Cerevel stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78$l$ of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

#### (Against all Individual Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Cerevel's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Cerevel within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Cerevel to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Cerevel and all of its employees.  As alleged above, Cerevel is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: January 23, 2024                    **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*